# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00099-COA

**J.F.G. AND C.L.G.**                                                                                 **APPELLANTS**

**v.**

**PEARL RIVER COUNTY DEPARTMENT OF**                            **APPELLEE**
**HUMAN SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2015 |
| TRIAL JUDGE: | HON. DAWN H. BEAM |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JAMES L. GRAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: STEVEN PATRICK WANSLEY |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | TERMINATED APPELLANTS' PARENTAL RIGHTS AND AWARDED APPELLEE FULL CUSTODY OF THE MINOR CHILDREN, INCLUDING AUTHORITY TO ENTER A CONSENT FOR ADOPTION |
| DISPOSITION: | AFFIRMED - 06/13/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This is an appeal from Pearl River County Chancery Court where the chancellor terminated the parental rights of the appellants. On appeal, the appellants assert that (1) the chancellor did not find that the grounds for termination of parental rights were established by clear and convincing evidence, (2) the chancellor did not consider all evidence before her, and (3) the State did not prove the grounds for termination of parental rights by clear and

convincing evidence. Finding no error, we affirm.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

¶2.     J.F.G. is the biological mother of the minor children.[1] C.L.G. was the legal father of three, and the biological father of two, of the minor children.[2]

¶3.     In August 2012, the Pearl River County Department of Human Services (DHS) received a report of (1) sexual abuse of one of the minor children and (2) drug use by the mother.[3] Per an order from the Pearl River County Youth Court, the minor children were placed in DHS custody, where they have remained continuously.[4] The mother and father were subsequently arrested for possession of a controlled substance. On November 14, 2012, the minor children were adjudicated as neglected by the youth court.

¶4.     The mother and father entered into service agreements with DHS in November 2012. Both failed to successfully complete their respective agreements. The mother failed to (1) complete drug rehabilitation, (2) maintain sufficient housing, (3) maintain visitation with the minor children, and (4) complete a psychological exam. She was also arrested in March 2013

---

[1] Due to the sensitive nature of this case, we have substituted initials for the minors' and parents' names. The minor children are C.A.S., born June 2004; C.T.G., born February 2008; C.M.G., born December 2008; and C.N.G., born December 2010.

[2] C.L.G. was the legal and natural father of C.M.G. and C.N.G., and the legal father of C.T.G. The legal father of C.A.S., and the biological father of C.T.G.—a separate person from the legal father of C.A.S.—were not parties to this appeal.

[3] Five days prior to the August 2012 report to DHS, the mother admitted to DHS her use of crystal methamphetamine and nonprescription pain medication.

[4] This is the second time DHS removed the children from the custody of the mother and father.

for use of crystal methamphetamine. After the March 2013 arrest, she was admitted to the Mississippi State Hospital at Whitfield and completed a twenty-eight day drug-treatment program. After completion of the program, DHS and the mother entered into a second service agreement in May 2013. She failed to complete that agreement when she (1) failed to pay child support, (2) failed to maintain adequate housing, and (3) admitted to using crystal methamphetamine again in November 2013. She was arrested again and sentenced to a program overseen by the drug court.

¶5.     The father failed to (1) complete drug treatment in a reasonable time, (2) maintain employment and housing, (3) maintain visitation with the minor children, (4) clear pending legal issues, and (5) complete a psychological exam. He tested positive for methamphetamine, and was also arrested and incarcerated for possession of a controlled substance with intent to distribute during this time.

¶6.     On April 30, 2014, following the mother's and the father's repeated failures to satisfy the requirements of the service agreements, the youth court determined that reunification was no longer in the best interests of the minor children and changed the recommendation of the permanency plan from reunification to termination. On October 22, 2014, DHS filed a petition to terminate the parental rights of the mother and father.

¶7.     A one-day trial was held on December 9, 2015. At trial, two DHS social workers testified, the original social worker assigned to the case during the pertinent events and the social worker assigned to the case during trial. The original social worker testified to the above facts regarding the allegations of abuse and neglect, the parents' service-agreement

3

failures, and the reports of drug use. In recounting forensic interviews conducted between the minor children and the forensic interviewer, the original social worker also testified that from 2008 to 2012 while the mother was at work, she kept her children at the home of a longtime friend. During this time the friend was living with a registered sexual offender, who was romantically involved with the friend.[5] While at the friend's home, one of the minor children was inappropriately touched between her legs and buttocks by the sexual offender, was repeatedly asked if she would engage in fellatio with the sexual offender, and observed the sexual offender molest another child. The child subject to the molestation also recounted the incidents to the minor child in this case who had observed it. Testimony also reflected that the sexual offender did engage in fellatio with another of the minor children involved in this case.

¶8.     The guardian ad litem (GAL) testified, and the original social worker corroborated generally, that the children said that, while at the mother's home, they personally observed the mother and father engage in sexual activities with each other and other partners, and viewed a pornographic video depicting the same. After having observed the above activities, the children revealed that two of them performed oral sex on each other. They also revealed that one of them threatened to kill another "if he ever told anyone about who used to hurt him[.]"[6]

_____

[5] Whether the events stemming from this individual's involvement are the same as those initially reported to DHS in August 2012 is unclear from the record.

[6] It is unclear from the record if the threat was over disclosure of the oral sex or some other physical abuse. However, the child who was threatened was involved in oral sex with another of them.

¶9.   The GAL corroborated the testimony of the original social worker regarding the forensic interviews and the reports of abuse and neglect. The GAL also testified that (1) the minor children indicated a desire to be adopted, (2) they are currently split between homes due to their sexual activity and the physical threats made between them, and (3) all of them are thriving in their current environments. Further, the GAL recommended adoption as being in the best interests of the minor children. The social worker assigned at the time of trial testified to the same.

¶10.   Neither the mother nor the father contested any of the above facts. A judgment was entered terminating the parental rights of the mother and father on December 17, 2015. The chancellor found that the grounds for termination of parental rights were established by clear and convincing evidence, and that termination was in the best interests of the minor children, making them eligible for adoption. The mother and father subsequently appealed to this Court.

## DISCUSSION

¶11.   When reviewing a termination of parental rights, we look for whether credible proof exists to support the chancellor's findings of fact by clear and convincing evidence. *In re K.D.G. II*, 68 So. 3d 748, 751 (¶12) (Miss. Ct. App. 2011). On appeal, the mother and father assert that (1) the chancellor did not find by clear and convincing evidence that the grounds for termination existed, and (2) the chancellor did not consider all of the evidence before her.

¶12.   At the time relevant to this appeal, Mississippi Code Annotated sections 93-15-101

5

to -111 (Rev. 2013) governed termination-of-parental rights proceedings.[7] Section 93-15-103(1) provided three prerequisites that must be found before addressing the specific grounds for termination. *See Chism v. Bright*, 152 So. 3d 318, 322-23 (¶15) (Miss. 2014). The mother and father only challenge the chancellor's finding that a ground existed for termination, not the finding of the prerequisites. Section 93-15-103(3) lists the eight grounds on which a termination of parental rights shall be based. Only one statutory ground has to be proven to justify termination. *See W.A.S. v. A.L.G.*, 949 So. 2d 31, 35 (¶11) (Miss. 2007). If the chancellor is satisfied by clear and convincing evidence that a ground for termination exists, she may order termination of parental rights. Miss. Code Ann. § 93-15-109 (Rev. 2013).

¶13.    Here, the chancellor found that grounds for termination existed because the minor children had been in custody of DHS for at least one year, the agency had made reasonable efforts to reunify the minor children with their parents, the parents failed to exercise reasonable available visitation with the children, and the parents failed to implement their respective placement plans. Miss. Code Ann. § 93-15-103(3)(d)(i) & (ii). The chancellor also found that grounds for termination existed because the children had been adjudicated as abused and neglected, custody had been transferred from the parents for placement, and a court of competent jurisdiction had determined that reunification was not in the children's

---

[7] The statute has since been amended. Miss. Code Ann. §§ 93-15-101 to -133 (Supp. 2016). Because the amendments did not have any retroactive effect, we apply the version of the statute in effect at the time of the events at issue. *See Estate of Elmore v. Williams*, 150 So. 3d 700, 701 n.1 (Miss. 2014) (statute in effect at the time is the version to be applied); *City of Starkville v. 4-Cty. Elec. Power Ass'n*, 909 So. 2d 1094, 1109 (¶41) (Miss. 2005) (statute has no retroactive effect unless it is obvious from its language); Miss. Laws ch. 431, § 24 (H.B. 1240) ("This act shall take effect and be in force from and after its passage [(approved April 18, 2016)].").

best interests. Miss. Code Ann. § 93-15-103(3)(h). Subsequently, the chancery court found that it was "in the best interest[s] of the minor [children] that the parental rights of [the mother and father] be terminated so that a permanent and stable plan for the future of the minor [children] may be made and so that the minor [children] will be eligible for adoption."

¶14. The mother and father first assert the chancellor erred by not stating at the hearing and in her written order that her findings were made by clear and convincing evidence. But in the chancellor's order terminating parental rights, she did state that her findings were "based on clear and convincing evidence." We find that the record supports the chancellor's finding. Thus, this issue is without merit.

¶15. The mother and father next assert that the chancellor disregarded all evidence before her demonstrating their progress since the initial filing for termination.[8] Yet a review of the record, in particular the hearing transcript, reveals that the chancellor considered all of the evidence of the parents' behavior and progress between the time the permanency-plan goal was changed to termination and the time of the termination hearing. The chancellor acknowledged their progress and found it unpersuasive. Because we find that the record supports the chancellor's finding, this issue is without merit.

**CONCLUSION**

¶16. We affirm the chancellor's judgment terminating the parental rights of the appellants.

¶17. **THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE**

---

[8] The appellants attempt to couch their second assertion as an issue of first impression: whether the chancellor should consider evidence of events occurring after the permanency plan was changed from reunification to termination.

7

**APPELLANTS.**

      **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR.**